## I. E. PALMER CO. v. PATTERSON.

(Circuit Court, E. D. Pennsylvania. February 17, 1910.)

### No. 143.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—HAMMOCK ATTACHMENT.

The Palmer patent, No. 574,073, for a hammock attachment, comprising a frame adapted to cause the hammock body or a portion thereof to assume a different position from that which it would normally assume when suspended, to form a seat or leg rest, or both, was not anticipated, and discloses patentable invention; also *held* infringed.

In Equity. Suit by the I. E. Palmer Company against James B. Patterson. On final hearing. Decree for complainant.

Emery & Booth and Fraley & Paul, for complainant.
Augustus B. Stoughton, for respondent.

J. B. McPHERSON, District Judge. It is well known that, when a hammock of the usual make is suspended by its ends, it will conform itself closely to the person of the occupant in all his movements. This characteristic often causes discomfort when a change of position is sought; and a principal object of the patent in suit—No. 574,073, granted to I. E. Palmer on December 29, 1896—is to afford relief from this inconvenience. The specification states:

"My invention relates to an improvement in seat attachments for hammocks, in which provision is made for causing a portion of the hammock body

---

to assume at pleasure a position other than that which it would normally assume when suspended, for the purpose of affording the occupant a seat and leg rest. or both, which shall conform to the position which the body of the occupant would naturally assume when at rest and lying on the back."

In order to accomplish these results the inventor devised a frame that may be conveniently attached to the fabric, or body, of the hammock, and is provided with bearing points upon which the fabric may rest and be supported. These points are so arranged that portions of the hammock's length are compelled to assume positions at varying angles with other portions, and thus furnish a seat or a leg rest, or both. In other words the frame is intended (using the language of the plaintiff's brief)—

" * * * to interrupt the natural line of pendent curvature between its points of support, and form a distinct seat or reclining portion or couch, of definite length and shape, and upon which the occupant may sit, recline, or lie, as upon an ordinary seat or couch, and upon which he may change his position at will without any of the embarrassment and discomfort which follow any attempt to change one's position in an ordinary hammock, which has no well-defined seat portion, and which, as above stated, follows and conforms always and automatically to any change of position of the occupant."

There can be no doubt—to continue the quotation—that:

"The result of the invention of the patent in suit is to give to the commercial hammock a well and permanently defined seat or couch portion, which does not follow every movement of the occupant, and therefore does not interfere with his movements to change position, but which still retains the elasticity, flexibility, lightness, and swinging capacity characteristic of the ordinary commercial hammock."

The inventor declared his device to consist—

" * * * broadly in a rigid frame capable of attachment to the hammock body, and provided with bearing points for the hammock body, such that the latter will be caused—throughout a portion of its length—to assume a position to form a natural seat or leg rest, or both."

Among frames of this description, two kinds are described and illustrated in the specification and drawings. One may be adjusted by the use of side rails in two sections, and of stay rods, slots, and lugs, so as to assume different angular positions; and the other is made without a joint in a single piece of such shape as may be described. In the use of either kind the hammock body or fabric is passed over and under the bearings, so that the fabric supports the frame, while the frame also supports the fabric in part and helps to keep it stretched. The claims involved are as follows:

"1. A hammock attachment comprising a frame independent of the body of the hammock and provided with bearings for the body of the hammock, the said bearings being so located with respect to one another that the hammock body when engaged therewith and suspended will have its natural curve interrupted to form a seat, substantially as set forth.

"2. A hammock attachment comprising a rigid frame provided with bearings for the body of the hammock, the said bearings being so located with respect to one another that the hammock body when engaged therewith and suspended will have its natural curve interrupted to form a seat, substantially as set forth."

The essential features of the invention are the frame and the engagement of the bearings with the fabric. The shape of the frame de-

termines the shape that the hammock must assume. Either a seat or a leg rest, or both a seat and a leg rest, may be presented; and these may be in effect united in one plane, so as to present a flat surface like a bed, or they may incline to each other at angles that differ in degree. But, whatever the shape of the frame may be, the hammock body is so engaged with the bearings that it has more or less movement lengthwise, and is continually adjusting itself, loosening or tightening as the weight of the occupant is applied or removed. One method of attaching the frame to the fabric is described by the inventor as follows:

"The framework as thus constructed may be attached to the hammock by passing the body, A, of the hammock over the rung, $d^1$, at the foot rest, thence under the rung, d, thence over the rung, E, thence over the flat cross-brace, D), and under the brace, $D^1$, and thence to the point of support."

The hammock body may thus have a bearing at three or more points on the frame, and when suspended the bearings will force it to follow the angle or angles of the frame. In the shape illustrated by Figs. 1, 2, and 3:

"A person seated upon that portion occupied by the seat section will be prevented from slipping along down the body of the hammock, and the legs of the occupant when so seated will be allowed to rest naturally upon the leg rest section of the frame, without bearing the weight at the heels and leaving the leg intermediate of the heel and the body unsupported, as is common in connection with hammocks as commonly in use."

In the shape illustrated by Fig. 6, the same method of attaching the frame is shown, but the frame itself is flat, and of course there is no leg rest in this particular structure. Both shapes, however, have the hammock body engaged in the same way with the bearings, and in both of them longitudinal tension is present.

For the purposes of this case, the two claims may be regarded as identical, and the defendant's hammock is, I think, a clear infringement of both. The points of likeness in the two devices are very well summarized in the plaintiff's brief:

"Inasmuch as defendant uses a straight frame, like Fig. 6, of the patent in suit; uses the end bearings, under and over which the fabric is passed, as in all of the figures of the patent in suit; has a frame which deforms the hammock fabric from its natural curve, like that of the patent in suit; has a frame which is independent of the fabric and capable of removal therefrom while the fabric is suspended, like that of the patent in suit; and has an arrangement such that the longitudinal tension automatically takes up the slack in the hammock seat—all like the patent in suit, defendant is in no position to assert that he does not infringe, even though he may prefer to add some features of his own design, like the lacing, and like the attaching of the end bars or rungs temporarily to the frame, to be held in position by the fabric instead of fixedly by the frame, as in the patent in suit."

In only two particulars that need be noticed does the defendant's hammock or couch differ from the patented article. One difference is to be found in the lacings under the seat. These give additional strength to the fabric and keep it more tightly stretched, by adding lateral tension to the longitudinal tension that is common to both hammocks. Lacing may perhaps be an improvement; but it does not produce a different result, or produce an old result by distinctly different means. Longitudinal tension is still an important object in the defend-

ant's hammock, as it is in the hammock of the plaintiff. Both parties use the same means to attain it—a more or less loose engagement of the fabric with the bearings of the frame; but the defendant gets a little more lateral stability, or rigidity, by the use of lacing. If he had frankly given up longitudinal tension altogether, and had merely suspended a bed or couch from the four corners of a rectangular frame, a different situation might be presented, although no definite opinion on that question need be expressed.

The second point of difference lies in the fact that the end bearings or rungs in the defendant's frame are either loose, being then held in place by the pressure of the fabric, or are temporarily attached, for example, by rubber bands, to the hooks provided to receive them; while in the plaintiff's frame such bearings are rigidly fixed and permanent. This, I think, is an unimportant distinction. The bearings perform precisely the same function in both frames, and it seems to be of little consequence that in one frame they are always in place, while in the other they are put into place whenever they are needed.

The case does not appear to require further discussion. The drawings of the patent are mainly confined to a preferred form, which is not the flat bedlike article manufactured by the defendant; but a flat bed or couch is plainly shown in Fig. 6, and is also clearly deducible from Figs. 1 and 2. It is not necessary that the cushion in Fig. 6 should be always of the shape there shown; and, indeed, it is not at all an essential part of the frame. But, even if it is to be regarded as a usual accompaniment of the flat frame shown in the figure, it is obvious that the angle shown in the drawing is not obligatory. Undoubtedly, as it seems to me, the angle may be gradually flattened, so that the cushion will soon become an ordinary mattress; and, when that point is reached, the substantial identity of the defendant's seat or couch can hardly be disputed. While the claims in controversy are broader than the drawings, I do not think that the drawings operate as a limitation. They are not inconsistent with the specification or the claims, but only show certain forms of the inventor's device.

The prior art is of little importance. I do not understand that any previous patent is seriously relied on to show anticipation.

The usual decree may be entered, with costs.